# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

XAVIER REYES,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

Civil No. 4:25-CV-_____
(Criminal No. 4:21-CR-00165)

United States Courts
Southern District of Texas
**FILED**

JUN 24 2025

Nathan Ochsner, Clerk of Court

## MOVANT'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

COMES NOW Xavier Reyes with this Memorandum of Law in support of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. In support thereof, Mr. Reyes sets forth specific facts showing that his guilty plea was not knowing or voluntary due to constitutionally ineffective assistance of counsel. Counsel's failures deprived Mr. Reyes of the meaningful guidance guaranteed by the Sixth Amendment. Because these errors were prejudicial and the claims are not conclusively refuted by the record, Mr. Reyes is entitled to relief, or at minimum, an evidentiary hearing under § 2255(b) to fully develop the factual basis of his claims.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii
TABLE OF AUTHORITIES ........................................................ iv
JURISDICTION .......................................................................... 1
STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE ......... 1
TIMELINESS ............................................................................. 2
SUMMARY OF THE PROCEDURAL HISTORY .......................... 2

   A.   Pretrial proceedings ............................................................. 2
   B.   Sentencing Hearing. ............................................................ 3
   C.   Direct Appeal ....................................................................... 3

ARGUMENT .............................................................................. 4

I.   The Conviction and Sentence of Mr. Reyes is Violative of His Sixth
Amendment Right to Effective Assistance of Counsel .................... 4
II. Counsel Induced Mr. Reyes's Guilty Plea by Misrepresenting the Effect of
Acceptance of Responsibility and Failing to Explain That His Guidelines
Still Resulted in a Life-Equivalent Sentence .................................. 5

   A.    Mr. Reyes was Abandoned by Counsel at a Critical Stage ................. 7
   B.    Counsel Failed to Advise Mr. Reyes That Trial Was a Rational
Alternative Once the Court Denied the Continuance and the Plea Offered
No Real Benefit ............................................................................... 8
   C.    Counsel's Failure to Explain the Option of an Open Plea Foreclosed
Mr. Reyes's Appellate Rights and Renders His Guilty Plea Unknowing,
Involuntary, and Constitutionally Invalid ..................................... 12

III. .... Counsel Failed to Explain That the Plea Offered No Benefit, Leading Mr.
Reyes to Waive His Rights Without Understanding the Pros and Cons of
Pleading Guilty ................................................................................ 14

   A.    The Plea Agreement Offered No Benefit and Counsel Failed to
Convey this to Mr. Reyes .................................................................. 15
   B.    Had Mr. Reyes Been Properly Advised of the Guideline
Enhancements and Life-Equivalent Range, He Would Not Have Pled Guilty
17
   C.    Trial was a Rational Option that Was Never Explained .................. 18

IV. Appellate Counsel Was Ineffective for Failing to Challenge the Denial of a Continuance That Left Mr. Reyes Unable to Make an Informed Plea ........ 19

    A.    Appellate Counsel's Failure to Raise a Preserved, Non-Frivolous Challenge to the Denial of a Continuance Constituted Constitutionally Deficient Performance and Prejudiced Mr. Reyes's Right to Meaningful Appeal ................................................................................................ 21

V. The Cumulative Effect of Counsel's Errors Deprived Mr. Reyes of Effective Assistance and Undermined the Integrity of the Proceeding ...................... 22

VI. An Evidentiary Hearing is Necessary and Would Be Useful to The Court. 25

    CONCLUSION ................................................................................. 27

    CERTIFICATE OF SERVICE ..................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anders v. California,*
    386 U.S. 738 (1967) ................................................................. 3, 22

*Banks v. Reynolds,*
    54 F.3d 1508 (10thCir. 1995) ...................................................... 5

*Blackledge v. Allison,*
    431 U.S. 63–75 (1977) ............................................................... 13

*Hill v. Lockhart,*
    474 U.S. 52 (1985) .................................................................... 7

*Lee v. United States,*
    582 U.S. 357 (2017) ................................................................... 11

*Massaro v. United States,*
    538 U.S. 500 (2003) ................................................................... 1

*Mersier v. United States,*
    2025 U.S. Dist. LEXIS 26212 (S.D. Fla. 2025) ........................... 13

*Nichols v. United States,*
    75 F.3d 1137, ............................................................................. 26

*Padilla v. Kentucky,*
    559 U.S. 356–70 (2010) ............................................................. 10

*Parle v. Runnels,*
    505 F.3d 922–28 (9th Cir. 2007) ............................................... 23

*Shaw v. United States,*
    24 F.3d 1040 (8th Cir 1994) ..................................................... 26

*Smith v. Robbins,*
    528 U.S. 259 (2000) ................................................................... 21-22

*Stoia v. United States,*
    22 F.3d 766 (7th Cir. 1994) ....................................................... 26

*Strickland v. Washington,*

466 U.S. 668 (1984) ................................................................................. 4, 5, 23

*Under Gall v. United States,*
   552 U.S. 38 (2007) ................................................................................ 10

*United States v. Baptiste,*
   8 F.4th 30–38 (1st Cir. 2021) ................................................................ 23

*United States v. Bass,*
   843 F. App'x 733 (6th Cir. 2021) .......................................................... 10

*United States v. Blaylock,*
   20 F.3d 1458 (9th Cir. 1994) ................................................................ 26

*United States v. Fernandez,*
   145 F.3d 59 (1st Cir. 1998) .................................................................. 23

*United States v. Tavberidze,*
   2025 U.S. Dist. LEXIS 43082 (S.D.N.Y. 2025) ................................... 8

*United States v. Williamson,*
   183 F.3d 458 (5th Cir. 1999) ................................................................ 22

*United States v. Witherspoon,*
   231 F.3d 923 (7th Cir. 2000) ................................................................ 26

*Virgin Islands v. Weatherwax,*
   20 F.3d 572 (3rd Cir. 1994) ................................................................. 26

*Ward v. United States,*
   995 F.2d 1317 (6th Cir. 1993) ............................................................... 1

*Williams v. Taylor,*
   120 S. Ct. 1495 (2000) ........................................................................... 4

**Statutes**

18 U.S.C. § 2251 ...................................................................................... 6, 15

18 U.S.C. § 2422 ...................................................................................... 15

18 U.S.C. § 2423 ...................................................................................... 6, 15

28 U.S.C. § 1746 ...................................................................................... 28

28 U.S.C. § 2255 ...................................................................................... *passim*

**Rules**

Fed. R. Crim. P. 11 ...................................................................................... 11

**Other**

U.S.S.G. § 3E1.1 ................................................................................ *passim*

U.S.S.G. § 2G2.1 ...................................................................................... 15

U.S.S.G. § 3D1.4 ...................................................................................... 15

U.S.S.G. § 4B1.5 ...................................................................................... 15

## JURISDICTION

This Court has jurisdiction to hear this motion, pursuant to 28 U.S.C. § 2255(a), which states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This Court sentenced Mr. Reyes and therefore has jurisdiction to hear his § 2255 motion and to grant the relief requested.

## STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE

Mr. Reyes did not raise the claims asserted on direct appeal because the facts set forth in his § 2255 motion were and are material to the claim of ineffective assistance of counsel but were not part of the record for direct appeal. "Cause" is therefore established for his failure to raise the claim prior to this motion. *Massaro v. United States*, 538 U.S. 500 (2003). Mr. Reyes has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. Reyes is established by the fact that absent relief by this Court, his sentence violates the Constitution and laws of the United States. *Id.*

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Reyes of his right to bring this motion, this Court is not precluded by

1

the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## TIMELINESS

This motion is timely filed under § 2255(f)(1), which provides that a motion filed under § 2255 within one year of a criminal judgment becoming final is timely filed. Mr. Reyes's judgment became "final" when petition for a writ of certiorari to the Fifth Circuit in the Supreme Court expired on June 18, 2024. The one-year statute of limitations under § 2255(f)(1) therefore expires June 18, 2025, and this motion is timely if filed prior to that date.

## SUMMARY OF THE PROCEDURAL HISTORY

### A. Pretrial proceedings.

A superseding indictment was filed April 28, 2021, charging Mr. Reyes with Distribution of Child Pornography (Count One); Possession of Child Pornography (Count Two); Sexual Exploitation of Children (Count Three); Sexual Exploitation of Children (Count Four); Coercion and Enticement (Counts Five and Six). (ECF No. 15.)

Mr. Reyes was arrested and held without bond. (ECF No. 6.) The government extended a plea offer shortly before trial. On July 28, 2022, counsel moved to continue the trial, explaining that discovery remained "incomplete" and that counsel had not yet discussed with Mr. Reyes the pros and cons of accepting a plea or going to trial. (ECF No. 27.) The motion emphasized that additional time was

2

necessary to allow Mr. Reyes to make an informed decision regarding the government's late plea offer. The court denied the motion the next day without explanation. (ECF No. 28.)

Seventeen days later, on August 15, 2022, Mr. Reyes appeared before the district court and pled guilty to Counts One, Three, and Four of the Superseding Indictment pursuant to a written Plea Agreement with the government. (ECF No. 31.)

### B. Sentencing Hearing.

Sentencing was held on December 12, 2022. The court ultimately imposed a term of 960 months (80 years) of imprisonment. This consisted of the statutory maximum on each count to run consecutively. (ECF No. 39.) Judgment was entered on December 15, 2022. (ECF No. 41.)

### C. Direct Appeal

Mr. Reyes timely filed a notice of appeal on December 21, 2022. (ECF No. 43.) Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no non-frivolous grounds for appeal. The Fifth Circuit found the *Anders* brief inadequate, however, and ordered supplemental briefing. In response, counsel submitted a supplemental *Anders* reiterating no non-frivolous issues for appeal. The appeal was dismissed on July 10, 2023. Mr. Reyes did not file a petition for *certiorari* in the Supreme Court.

This timely motion under 28 U.S.C. § 2255 follows.

3

## ARGUMENT

I.  THE CONVICTION AND SENTENCE OF MR. REYES IS VIOLATIVE
OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE
OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court

established a two-prong test to govern ineffective assistance of counsel claims. To

obtain reversal of a conviction or to vacate a sentence based on ineffective

assistance of counsel the defendant must show: (1) that counsel's performance fell

below an objective standard of reasonableness; and (2) that there is a reasonable

probability that, but for counsel's objectively unreasonable performance, the result

of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v.

Taylor*, 120 S. Ct. 1495, 1512-16 (2000).

To establish deficient performance, "[t]he defendant must show that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 695. "The result

of a proceeding can be rendered unreliable, and hence the proceeding itself unfair,

even if the errors of counsel cannot be shown by a preponderance of the evidence to

have determined the outcome." *Strickland* 466 U.S. at 694.

A court hearing an ineffectiveness claim should consider the totality of the

factors that guided the decision maker in the challenged proceeding, then try to

determine which factors were or were not "affected" by counsel's errors. "Taking the

unaffected [factors] as a given and taking due account of the effect of the errors on

4

the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

The *Strickland* test for "prejudice," a difference in the outcome of the proceeding, applies only to the outcome of the particular proceeding affected by counsel's deficient performance. *See Banks v. Reynolds*, 54 F.3d 1508 (10thCir. 1995) ("prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a reasonable probability that he would have had his conviction and/or sentence vacated and/or remanded to the lower court).

Mr. Reyes has made specific, sworn, factual allegations, in his § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial, trial sentencing, and appellate phases of his case. Based on the foregoing facts and law, Mr. Reyes has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland.*

## II. COUNSEL INDUCED MR. REYES'S GUILTY PLEA BY MISREPRESENTING THE EFFECT OF ACCEPTANCE OF RESPONSIBILITY AND FAILING TO EXPLAIN THAT HIS GUIDELINES STILL RESULTED IN A LIFE-EQUIVALENT SENTENCE

When Mr. Reyes agreed to plead guilty, his decision was based almost entirely on what his attorney told him: that by pleading, he would receive a three-

5

point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and avoid a life sentence. Counsel repeatedly emphasized the value of this reduction and framed it as the decisive benefit of accepting the plea offer. But what counsel never explained—and what Mr. Reyes never understood—is that even with the full three-point reduction, the guideline range he faced still amounted to life in prison.

Mr. Reyes was charged with three serious sex offenses carrying high statutory maximums. Counts 3 and 4 each charged violations of 18 U.S.C. § 2251(a), which carry 30-year maximums. Count 2 charged a violation of 18 U.S.C. § 2423(b), also punishable by up to 30 years. Although Count 1 was dismissed, the government relied on the conduct from that count at sentencing. Stacked consecutively, these counts exposed Mr. Reyes to 90 years in prison. And based on standard offense-level calculations in similar federal sex offense cases involving multiple victims and multiple counts, Mr. Reyes's total offense level — even with the three-level reduction —placed him within a guideline range of life.

Mr. Reyes was never told any of this. Counsel never sat down with him to explain how the guideline range would be calculated. Counsel never reviewed the sentencing table with him. Counsel never walked through the enhancements. And counsel never told him that even with the three-level § 3E1.1 reduction, the advisory range was still at the top of the sentencing chart—360 months to life. Instead, counsel gave him one message: If you plead guilty, you'll get credit for acceptance of responsibility, presumably preventing a life sentence.

6

This was bad advice.

## A. Mr. Reyes was Abandoned by Counsel at a Critical Stage

Because Mr. Reyes had no other source of guidance and no meaningful access to the discovery or sentencing materials, he relied entirely on counsel's promise. It was not just misleading, it was materially false. Mr. Reyes understood the three-point reduction to mean that his exposure would be substantially reduced. That belief was not unreasonable, because he had no way of knowing that the reduction would change nothing, and that he would still face — and receive — what amounted to a life sentence. The court ultimately imposed a sentence of 960 months (80 years), which confirms what should have been disclosed *by counsel* from the beginning.

This failure to explain the guideline range violated Mr. Reyes's Sixth Amendment right to the effective assistance of counsel. A guilty plea is valid only if it is entered knowingly, voluntarily, and with full understanding of the consequences. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Where, as here, counsel fails to provide even basic information about how the guideline range will apply, especially when the client's exposure remains effectively unchanged despite the plea, counsel's performance falls well below the constitutional minimum.

The prejudice is plain. Mr. Reyes pled guilty based on the understanding that he would avoid a life sentence. He believed the plea was his only path to that result. Had counsel explained the reality that the guideline range would still require 80 years, Mr. Reyes would never have accepted the plea. He would have considered an

open plea, where he could preserve his rights, or taken his chances at trial. Either option would have been more rational than giving up everything.

Mr. Reyes's experience is echoed in *United States v. Tavberidze,* 2025 U.S. Dist. LEXIS 43082 (S.D.N.Y. 2025), where the court criticized § 3E1.1(b) as a structural coercion device. In that case, the court noted that when the government (or counsel) uses the acceptance reduction to pressure pleas, even where the sentence will remain unchanged, it creates a dynamic that makes the plea unknowing and involuntary.

That's what happened here.

Mr. Reyes was not informed. He was misled. And he gave up everything based on counsel's failure to say the one thing that mattered most: "Even with the reduction, you're still looking at a life-equivalent sentence." Because Mr. Reyes was never told the truth about his exposure, and because he made a life-altering decision based on a false promise, the plea was not knowing, not voluntary, and not the product of effective counsel. Relief is warranted under *Strickland.*

### B. Counsel Failed to Advise Mr. Reyes That Trial Was a Rational Alternative Once the Court Denied the Continuance and the Plea Offered No Real Benefit

Mr. Reyes pled guilty just 17 days after the court denied his unopposed motion to continue trial. At the time of that motion, defense counsel had not yet reviewed the discovery with Mr. Reyes and had not discussed the pros and cons of accepting a plea or going to trial. Counsel told the court this in writing. The purpose

of the continuance request was clear: Mr. Reyes could not make an informed decision about how to resolve the case.

The court denied the motion without explanation the next day.

From that moment forward, Mr. Reyes was placed in an impossible position. He was under pressure to enter a plea but lacked the critical information needed to evaluate his options. He had not reviewed the government's evidence. He had not discussed trial strategy. And most important of all, he had not been told what sentence he actually faced under the U.S. Sentencing Guidelines. That omission — standing alone — is fatal under the Sixth Amendment.

At no point before pleading guilty did counsel explain how the Guidelines would apply to Mr. Reyes's case. He still does not know because all the sentencing filings were sealed, and he is not allowed to access them. Counsel did not walk through the offense level calculations. Counsel did not show him the sentencing table. Counsel did not discuss enhancements, departures, or the likely outcome based on the charges. Instead, counsel relied entirely on one idea: that pleading guilty would secure a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and that this would somehow help Mr. Reyes avoid a life sentence.

This advice was not just incomplete; it was dangerously misleading.

Mr. Reyes's charges included multiple serious sex offenses carrying 30-year statutory maximums. Even with one count dismissed, he faced three counts that could be stacked consecutively for a total of 90 years. Based on typical offense level

9

computations in similar cases, and incorporating the three-level reduction under § 3E1.1, his total offense level still likely produced a guideline range of 360 months to life. The sentence ultimately imposed — 960 months (80 years) — was functionally indistinguishable from life.[1] And yet, Mr. Reyes never knew this. Counsel never explained that even with the 3E1.1 reduction, he still faced a life-equivalent sentence. The Guidelines were never discussed.

That omission matters. Under *Gall v. United States*, 552 U.S. 38 (2007), the Sentencing Guidelines are the starting point and the initial benchmark for every federal sentence. They are the framework within which nearly all federal sentencing decisions are made. A defendant cannot meaningfully evaluate a plea without knowing what the Guidelines say. This is not a technicality. It is a constitutional baseline. *See Padilla v. Kentucky*, 559 U.S. 356, 369–70 (2010) (counsel must advise clients on clear consequences of guilty plea).

The government might argue, as it usually does, that Mr. Reyes confirmed under oath at the plea hearing that he understood the court could sentence him anywhere within the statutory maximum. That is true — but irrelevant. A plea is not automatically rendered knowing and voluntary simply because the defendant

---

[1] *See, e.g., United States v. Bass*, 843 F. App'x 733 (6th Cir. 2021) ("The sentencing guidelines do not define an equivalent term of months or years for a life sentence. The Sentencing Commission, however, equates a life sentence with 470 months of imprisonment").

says the right words during the Rule 11 colloquy. The relevant question is whether counsel gave him the information necessary to understand what he was agreeing to.

Mr. Reyes's situation fits squarely within the holding in *Lee v. United States*, 582 U.S. 357 (2017). In *Lee*, the defendant pled guilty based on the belief, later shown to be false, that it would help him avoid mandatory deportation. The Court held that even a slim chance of success at trial – a "Hail Mary," as the court called it – is a rational alternative when the plea offers no real benefit and leads to a catastrophic result.

Mr. Reyes faced the same dilemma. He was told to plead guilty to secure a three-point reduction. He did. He received 80 years. That is catastrophic. If he had known the truth, that the 3E1.1 reduction did not meaningfully reduce his exposure, and that he still faced a life sentence, he would not have pled guilty. He would have taken the Hail Mary at trial.

The Court acknowledged that a defendant in Mr. Reyes's shoes may reasonably choose trial, even if the defendant's "prospects of acquittal were grim," because "[w]hen the consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Lee*, 582 U.S. at 367. That is exactly what Mr. Reyes would have done if he had received competent advice.

But he didn't. He pled guilty based on a fundamental misunderstanding caused by counsel's omissions. Counsel never calculated the Guidelines. Counsel

11

never explained how they worked. Counsel never advised him that even with the 3E1.1 reduction, he still faced life. Counsel told him to plead, then told the court counsel hadn't yet discussed whether he should plead.

### C. Counsel's Failure to Explain the Option of an Open Plea Foreclosed Mr. Reyes's Appellate Rights and Renders His Guilty Plea Unknowing, Involuntary, and Constitutionally Invalid

Seventeen days before Mr. Reyes pled guilty, his attorney filed a written motion for continuance explaining to the court that counsel had not and could not advise him on how to proceed. Discovery was "incomplete," counsel said, and admitted counsel had not discussed the pros and cons of accepting a plea or going to trial. Counsel expressly stated counsel needed more time to advise Mr. Reyes so that he could "make an informed decision" about whether to accept the government's last-minute plea offer or go to trial.

The court denied that motion the next day, without providing any reason, leaving Mr. Reyes with a binary, uninformed, high-stakes choice. Counsel did not seek reconsideration. Counsel did not pivot to strategic alternatives. Instead, counsel steered Mr. Reyes straight into the government's plea agreement, which waived all his rights to challenge his case, not the evidence against him once it became known, not the 80-year sentence. Counsel never told him of any of these consequences under the plea agreement.

At no point did counsel advise Mr. Reyes that he could plead guilty without entering the government's agreement — that is, via an open plea. Counsel never

12

explained that an open plea would allow him to accept responsibility while preserving his right to appeal the court's denial of the continuance, the delayed and incomplete discovery, and any unresolved evidentiary issues tied to material that was still being withheld. Counsel did not explain that the court could still award a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility even if Mr. Reyes pled openly.

As the Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63, 73–75 (1977), plea hearing statements create a "formidable barrier" but not an insurmountable one, especially where the record shows that counsel's failures caused the defendant to misunderstand the consequences of the plea. Here, counsel herself admitted — on the record, in writing — that counsel had not yet provided Mr. Reyes with the necessary legal advice before the plea was entered. That is not a hindsight argument. It is documented fact.

And that failure was compounded by the government's conduct. Mr. Reyes had not received complete discovery. The government acknowledged obstacles and delays in providing discovery. Defense counsel flagged the problem repeatedly in counsel's motions. Yet counsel still advised Mr. Reyes to take a deal he didn't understand and that gave him nothing in return. *See Mersier v. United States*, 2025 U.S. Dist. LEXIS 26212 (S.D. Fla. 2025) (granting a hearing where counsel failed to advise of the option for an open plea).

What makes Mr. Reyes's case even stronger is the paper trail. Counsel in Mr. Reyes's case filed a public motion admitting that counsel hadn't advised him of his options and hadn't reviewed discovery. The court denied counsel's request for time. The plea followed.

That's not harmless. That's structural. When Mr. Reyes entered that plea, he lost every available avenue to challenge the serious procedural and constitutional defects that had accumulated before trial. And because of that, *even if he had valid claims*, he couldn't bring them. This was not strategy. This was omission. It was deficient performance under *Strickland* and *Hill*.

Because Mr. Reyes's guilty plea was entered without knowledge of his real sentencing exposure, without an understanding of his alternatives, and without advice about the rights he would lose, the plea cannot be deemed knowing, voluntary, or constitutionally valid. It must be vacated.

### III. COUNSEL FAILED TO EXPLAIN THAT THE PLEA OFFERED NO BENEFIT, LEADING MR. REYES TO WAIVE HIS RIGHTS WITHOUT UNDERSTANDING THE PROS AND CONS OF PLEADING GUILTY

Before pleading guilty, Mr. Reyes was never advised that even if Count 1 were dismissed and even with full credit for acceptance of responsibility under § 3E1.1 he still faced a *de facto* life sentence. This omission deprived him of the ability to make an informed decision about whether to plead, and if so, on what terms.

14

### A. The Plea Agreement Offered No Benefit and Counsel Failed to Convey this to Mr. Reyes

Mr. Reyes was charged with three serious sex offenses: two counts under 18 U.S.C. § 2251(a) (Counts 3 and 4), and one count under 18 U.S.C. § 2423(b) (Count 2). Each carried a 30-year statutory maximum. The dismissed count (Count 1, § 2422(b)) was removed via plea deal, but its conduct remained available for guideline purposes. More importantly, the conduct underlying Counts 2 through 4, standing alone, typically triggers the following enhancements:[2]

- Grouping of multiple sex offense counts involving different victims increased the offense level through the combined application of § 2G2.1(d)(1) and § 3D1.4.
- A pattern of activity enhancement under § 4B1.5(b)(1) added 5 levels and increased the criminal history category to V.
- Use of a computer or interactive device to facilitate the offense added another 2 levels under § 2G2.1(b)(6).

Based on standard practice in similar federal cases, these enhancements yield a Total Offense Level of 43, which translates to a guideline sentence of life. Yet counsel never explained this framework to Mr. Reyes. He was not shown the Guidelines table. He was never walked through the grouping rules, the enhancements, or the effect of multiple counts and multiple victims. He was not advised that these provisions, standing alone, guaranteed that his sentence

---

[2] Mr. Reyes must assume the typical enhancements applied in his case because he was never given access to the sentencing documents because they are sealed.

15

exposure remained functionally the same regardless of whether Count 1 was dismissed.

Mr. Reyes later stated that he did not understand that the dismissed charge could still be used against him at sentencing. He thought the plea agreement removed the most serious charge and capped his sentencing exposure. He believed the plea got rid of the life max and that the three-point reduction for acceptance of responsibility under § 3E1.1 would prevent a life sentence. He said he never had the sentencing range explained, never saw the guideline table, and did not know the sentence could still be stacked to 80 years.

He had only a handful of brief meetings with counsel before the plea, none of which included a review of sentencing exposure. He did not know what sentence the court might impose, nor that he was eligible for the statutory maximum on all three counts. He thought the worst-case scenario had been taken off the table by the plea.

He was confused about how the dismissed conduct came back into the picture, and why the sentence was so high despite his cooperation and guilty plea. A so-called "character expert" had been retained by the defense, but no report was ever introduced, and no mitigation was presented.

These facts show a complete failure to advise Mr. Reyes of how the Guidelines applied.

This failure to inform Mr. Reyes of how the Guidelines would apply constituted constitutionally deficient performance. A defendant cannot make a

16

knowing and voluntary decision to plead guilty without understanding the real sentencing consequences. Here, those consequences were dictated by the guideline framework itself, which counsel never explained. Mr. Reyes had no way to assess the plea's value — or its futility — because he was never told that his sentencing range was locked in by the enhancements alone. The result was not a strategic error. It was a total absence of advice on the one issue that mattered most: what sentence he was likely to receive.

### B. Had Mr. Reyes Been Properly Advised of the Guideline Enhancements and Life-Equivalent Range, He Would Not Have Pled Guilty

The prejudice from counsel's failure to explain the operation of the Sentencing Guidelines is not hypothetical. It is confirmed by the sentence the court ultimately imposed. Mr. Reyes received a total sentence of 80 years in prison, the statutory maximum for each count, imposed consecutively. This outcome is consistent with the advisory guideline range for Offense Level 43, which recommends a sentence of life imprisonment.

Mr. Reyes believed that by pleading guilty, he was avoiding the most severe outcome — a life sentence — and gaining a sentencing benefit that would meaningfully improve his position. Counsel reinforced that belief by emphasizing the three-point reduction under § 3E1.1 and framing the plea as the best path to leniency. What Mr. Reyes was never told is that the Guideline enhancements applied to the remaining counts independent of the dismissed charge and would

17

place him in the same life-equivalent range, regardless of whether Count 1 remained.

Mr. Reyes's choice to plead guilty was based on a fundamental misunderstanding about the consequences of that decision. That misunderstanding undermines the validity of the plea and establishes prejudice under *Hill*, which holds that a defendant suffers prejudice when, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

### C. Trial was a Rational Option that Was Never Explained

As noted above, the Supreme Court has made clear in *Lee* that a defendant's decision to go to trial can be rational even when the probability of success is low. That is the situation Mr. Reyes faced. The sentence he received was just as bad as if he lost at trial. It reflected neither a negotiated resolution nor a tactical benefit; it was simply the unaltered application of the Sentencing Guidelines. Had he understood that, he would not have pled guilty but insisted on going to trial. The decision would have made rational sense.

In sum, if Mr. Reyes had been given even a basic explanation of the guideline structure and the role enhancements would play in his case, he would have understood that the plea offered no reduction in his sentencing exposure. He would have rejected it, preserved his rights, and forced the government either to make further concessions or to proceed to trial. Because he was not given that

18

information, and because the sentence he received confirms the worst-case guideline outcome, the prejudice is manifest.

### IV. APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE DENIAL OF A CONTINUANCE THAT LEFT MR. REYES UNABLE TO MAKE AN INFORMED PLEA

Prior to entering a guilty plea, Mr. Reyes's trial counsel filed an unopposed motion to continue trial, stating in clear terms that counsel had not reviewed discovery with Mr. Reyes and had could not advise him on whether to proceed to trial or enter a guilty plea. In that motion, counsel admitted that counsel had not yet discussed with Mr. Reyes going to trial or pleading guilty because discovery was "incomplete." This was not a boilerplate motion. It contained detailed factual representations about the state of trial preparation and the defense team's inability to provide basic legal guidance due to incomplete discovery review and insufficient time.

Importantly, the government did not oppose the motion.

The next day the court issued a one-line text entry denying the request. No findings were made regarding whether Mr. Reyes had been properly advised or whether trial counsel had received adequate time to prepare.

There is nothing in the record to suggest that discovery was ever provided and reviewed during the two weeks between the denied continuance and the change of plea. That is because it wasn't. No supplemental motion was filed indicating that the case was now ready for trial, that legal advice had been rendered, or that Mr.

19

Reyes had received the necessary information to make a knowing and voluntary decision. To the contrary, the plea happened on the date trial had originally been scheduled to begin, suggesting that counsel had no opportunity to prepare a defense, consider pretrial motions, or explore trial strategy.

Despite this, appellate counsel failed to raise the continuance denial on direct appeal. Counsel filed an *Anders* brief stating that there were no non-frivolous grounds for review, even though this claim had been preserved in writing, directly implicated Mr. Reyes's ability to receive legal advice, and affected the validity of his guilty plea. Counsel's brief did not mention the continuance motion, the court's denial, or the fact that the plea followed just days later without any record-based showing that the circumstances had changed. Counsel did not argue that Mr. Reyes entered a plea without understanding the charges or options, despite trial counsel stating on the record that no such advice had yet been given.

The omission of the denial of continuance on appeal was not based on a tactical choice. It was a product of an *Anders* filing that overlooked one of the most serious procedural errors in the case: the defendant was required to decide between trial and plea while his own attorney had not reviewed the government's discovery or provided basic legal advice.

This was not a close call. The record on appeal contained everything needed to present the issue: the motion, the government's lack of opposition, the court's perfunctory denial, and the resulting guilty plea entered on the original trial date.

20

Appellate counsel failed to raise it.That failure is the foundation of this claim. Appellate counsel was not merely ineffective for missing a creative or speculative issue. Counsel failed to assert a preserved, established ground that went to the heart of Mr. Reyes's Sixth Amendment rights and the reliability of his plea. The failure occurred on direct appeal, where Mr. Reyes had a constitutional right to representation and a reasonable expectation that his counsel would identify and present any errors preserved in the trial record.

### A. Appellate Counsel's Failure to Raise a Preserved, Non-Frivolous Challenge to the Denial of a Continuance Constituted Constitutionally Deficient Performance and Prejudiced Mr. Reyes's Right to Meaningful Appeal

A criminal defendant is entitled to effective assistance of counsel not just at trial, but also on direct appeal. That right includes more than the presence of counsel; it includes the duty to competently review the record, identify preserved and non-frivolous issues, and raise those issues in a meaningful way. A court-appointed attorney who fails to raise an obviously arguable claim — especially one preserved in the district court — has not fulfilled counsel's Sixth Amendment obligation.

The legal standard governing ineffective assistance of appellate counsel is well established. On appeal, the *Strickland* standard is met when an attorney fails to raise a claim that is clearly stronger than those presented, or when counsel raises no issues at all despite having preserved, arguable claims in the record. See *Smith*

*v. Robbins*, 528 U.S. 259, 288 (2000); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). The appellate process is not fair if meaningful issues are abandoned without review.

Filing a brief under *Anders v. California*, 386 U.S. 738 (1967), does not shield counsel from scrutiny. *Anders* provides a mechanism for appointed attorneys to withdraw where an appeal is wholly frivolous. But to use that mechanism properly, counsel must conduct a "conscientious examination" of the record and certify that no non-frivolous issues exist. If any arguably meritorious claim is present, counsel must file a merits brief and pursue the appeal. Counsel may not invoke *Anders*· merely for convenience or due to time pressure.

Here, appellate counsel filed an *Anders* brief on Mr. Reyes's behalf and identified no issues for appeal, despite the presence of a preserved, outcome-dispositive claim: that the district court denied Mr. Reyes a trial continuance under circumstances that foreclosed meaningful consultation with counsel, obstructed defense preparation, and forced Mr. Reyes to enter a plea while he remained uninformed about the government's case.

## V.    THE CUMULATIVE EFFECT OF COUNSEL'S ERRORS DEPRIVED MR. REYES OF EFFECTIVE ASSISTANCE AND UNDERMINED THE INTEGRITY OF THE PROCEEDING

Mr. Reyes asserts that each individual ground presented in this motion—standing alone—satisfies the *Strickland* standard and warrants relief under 28 U.S.C. § 2255. But even if this Court determines that no single error, in isolation,

- Trial counsel failed to explain how the Guidelines actually applied to the remaining charges. Counsel never advised Mr. Reyes that even with Count One dismissed, the conduct in Counts Two through Four independently triggered a life-equivalent guideline range. Counsel did not walk him through offense level calculations, show him the Sentencing Table, or explain that the enhancements were mandatory and automatic.

- Trial counsel moved to continue trial on the basis that counsel had not reviewed discovery or advised Mr. Reyes on whether to plead or go to trial, then did nothing when the court denied the motion. Just seventeen days later, Mr. Reyes entered a guilty plea. There is no record that the underlying issues—lack of discovery review and legal advice — were resolved during that period. Mr. Reyes entered the plea under the very conditions his attorney had identified as making meaningful representation impossible.

- Appellate counsel then filed an *Anders* brief, asserting that there were no non-frivolous grounds for appeal — even though the motion to continue was preserved in the record and clearly implicated Mr. Reyes's Sixth Amendment rights. Counsel failed to raise a single claim, including the preserved argument that the denial of the continuance left Mr. Reyes uninformed and legally unsupported in the days leading up to his plea. Counsel acknowledged that Mr. Reyes's plea did not waive ineffective assistance claims but raised none.

These were not technical errors. They were systemic failings that denied Mr. Reyes the opportunity to receive advice, evaluate evidence, consider trial, negotiate alternatives, or meaningfully appeal. Trial counsel failed to ensure Mr. Reyes understood what the plea did and did not protect him from. Appellate counsel then abandoned the record-based opportunity to challenge how the plea came about.

The result was catastrophic. Mr. Reyes received a sentence of 80 years in prison, the statutory maximum for each count, imposed consecutively. That sentence was driven by the very guideline structure and enhancements that counsel

24

meets that threshold, the cumulative effect of trial and appellate counsel's errors, intertwined and reinforcing, rendered the proceeding fundamentally unfair. This Court must assess the totality of counsel's performance and consider aggregate prejudice.

"Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect... so as to deny due process." *United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir. 1998). See also *United States v. Baptiste*, 8 F.4th 30, 36–38 (1st Cir. 2021); *Parle v. Runnels*, 505 F.3d 922, 927–28 (9th Cir. 2007). The Supreme Court has directed that prejudice under *Strickland* must be evaluated in light of the totality of the circumstances, not in isolation. *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984).

Here, the combined effect of counsel's failures distorted the plea process, undermined the reliability of the sentence imposed, and denied Mr. Reyes the constitutional guarantee of informed decision-making and meaningful appellate review. These were not isolated lapses. They were compounding breakdowns that gutted the adversarial process at every critical stage.

The cumulative record shows:

- Trial counsel misrepresented the benefit of the plea deal, telling Mr. Reyes it would result in a lower sentence by securing a three-point reduction under § 3E1.1, without disclosing that the sentencing guidelines — driven by enhancements for pattern of activity, computer use, and multiple counts — still yielded a range of 360 months to life, making the reduction meaningless. Mr. Reyes entered the plea believing he was avoiding a life sentence, when in fact he was not.

23

never explained and never challenged. Mr. Reyes waived valuable rights under a plea agreement he did not understand, following a rushed process triggered by the court's refusal to grant more time — despite unopposed evidence that legal consultation had not occurred.

The adversarial process failed at every stage. Counsel's errors converged to produce a conviction and sentence that were neither informed nor meaningfully reviewed. The Court did not receive the benefit of proper advocacy. The appellate court was told no issues existed. Mr. Reyes, facing the most severe punishment imaginable, was left without any functioning safeguard of his rights.

Because these errors were not siloed but cumulative, and because their combined weight undermines confidence in the outcome, relief is warranted even if no single ground meets the *Strickland* standard in isolation. At minimum, Mr. Reyes is entitled to an evidentiary hearing on the combined impact of counsel's performance.

## VI.  AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

25

thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

§ 2255(b).

In the instant case, Mr. Reyes has pleaded, presented evidence, and argued the applicable law to demonstrate that his sentence and conviction are violative of his Sixth Amendment right to effective assistance of counsel. While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records." These allegations require an evidentiary hearing under well-settled law. *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless§ 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax,* 20 F.3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States,* 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States,* 75 F.3d 1137, I 145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon,* 231 F.3d 923 (7th Cir. 2000).

26

## CONCLUSION

For the reasons stated, Mr. Reyes respectfully requests relief under 28 U.S.C. § 2255. Counsel's constitutionally deficient performance rendered the plea unknowing and the sentence fundamentally unfair. Because these claims raise serious constitutional questions and are not conclusively refuted by the record, Mr. Reyes asks that his conviction and sentence be vacated. In the alternative, he requests an evidentiary hearing under *Strickland* and § 2255(b) to resolve material factual disputes.

Respectfully submitted,

_6 - 16 - 25_
Date

Xavier Reyes
Reg. No. 01102-506
FCI Pekin
PO Box 5000
Pekin, IL 61555

*Pro Se* Movant

## CERTIFICATE OF SERVICE

I certify under the penalty of perjury, pursuant to Title 28 U.S.C. § 1746, that this filing was handed to prison officials for mailing, with affixed, prepaid first-class postage, to the following on the date below.

Clerk of Court
United States District Court
515 Rusk Street, Room 5300
Houston, TX 77002

United States Attorney's Office
1000 Louisiana St Ste 2300
Houston, TX 77002

Respectfully submitted,

_____6 - 16 - 25_____
Date

_____
Xavier Reyes
Reg. No. 01102-506
FCI Pekin
PO Box 5000
Pekin, IL 61555

*Pro Se* Movant

28